323 0076 the people of the state of Illinois, Appalee versus Jose F. Vilchis, appellant. Mr. Fisher, you may proceed. Thank you, your honors. Good afternoon, your honors. May it please the court and counsel. I'm Mark Fisher from the office of the state appellate defender. I represent the defendant in this case, Jose Vilchis. Mr. Vilchis was convicted in a jury trial of eight counts of criminal sexual assault. Specifically, the jury found that in late 2013 and early 2014, he engaged in criminal conduct on different dates with a female whose initials are B.T. Now, she was an adult at the time of trial, but back in 2013-2014, she was a teenager, and Mr. Vilchis was her gymnastics coach. Mr. Vilchis was sentenced to eight mandatorily consecutive terms of imprisonment, totaling 96 years imprisonment. Three issues are raised on appeal. All of them, to varying degrees, deal with the admission at trial of other crimes testimony, and each of the three issues respectfully asks this court to reverse his convictions and to remand this cause for additional de novo proceedings. Briefly, he seeks this relief in issue one because the judge abused his discretion by allowing the jury to hear an excessive amount of other crimes testimony. In addition, the jury was improperly instructed as to the purposes for which it could consider this testimony. Mr. Fisher, can you please tell me what you believe is the line between excessive and accessible amounts of other crimes evidence? Sure, that's a fair question. So, Illinois courts have not identified any particular number of other crimes witnesses that is either appropriate or excessive in every single case. In other words, it comes down to the facts of the particular case. Under the facts of this case, Mr. Vilchis submits that here the jury heard an excessive amount of total of six witnesses at trial. Half of those witnesses, three witnesses, were other crimes witnesses. The first, third, and sixth. Mr. Fisher, what was it about the three women's testimonies that made it excessive? Okay. So, in a case such as this one where there is other to whether the state proved beyond a reasonable doubt the allegations in the charging instrument. So, the question for the jury, did he sexually abuse the complainant B.T.? The conviction cannot rest on solely the jury believing testimony of the other crimes witnesses. That testimony is admitted for and considered for a limited purpose. And so, with each succeeding other crimes witness, the danger becomes, and only courts have recognized, that there is a risk that with each succeeding other crimes witness, that testimony tends to dominate the trial and creates the risk that the jury will convict the defendant, not because they necessarily believe he committed the charge offenses, but perhaps because they believe some of these other witnesses, he's a bad guy, he's dangerous, he needs to be put away. Whereas their verdict needs to come down to whether they believe the complainant. Here the state opened its case and closed its case with other crimes witness in the middle. In addition, the other three prosecution witnesses also briefly referenced other crimes. And so, that was the danger here. In addition, the jury was advised, was instructed as to the various purposes for which it could consider such testimony. I would submit that one of those purposes was appropriate, and that was propensity. The other laundry list of purposes did not apply under the facts of this case and argument today. I'd like to talk about the one that was most blatantly improper and prejudicial, and that was the part of the instruction that told the jury it could consider the other crimes testimony as substantive evidence of guilt. Now, those precise words do not appear in the instruction, but equivalent words do. And here I'm referring to the phrase in the instruction telling the jury it could consider the other crimes testimony for the purpose of rebutting a defense. So, what was the defense in this case? The defense was that Mr. Vilchus did not commit these offenses, and that the state did not prove that he did beyond a reasonable doubt. So, evidence rebutting that defense would logically be evidence establishing that he committed the offenses, that he was proved guilty beyond a reasonable doubt. This part of the instruction plainly told the jury improperly it could consider the testimony as substantive evidence of guilt. And unfortunately, that error was exacerbated, as argued in the third issue raised on appeal, by the prosecutor's rebuttal closing argument, in which, among other things, the prosecutor told the jury exactly that. The prosecutor correctly told the jury. Counsel, if I may. Yes, Your Honor. This is not a rhetorical question. I'm actually intrigued by this question. When you say it's improper to consider other crimes evidence as substantive evidence, I'm not understanding what you mean by that. Okay. Why isn't other crimes evidence, as it relates to the defendant's propensity, substantive evidence? What do you mean when you say it's improper substantive evidence? I don't propensity, whether we're talking motive, identity, modus operandi, intent, in other words, other bases that are sometimes used for purposes of inventing other crimes testimony. Those are what the courts refer to as limited purposes. Now, of course, it is considered by the jury and arriving at its verdict, no question. But ultimately, whether the defendant is convicted or not, comes down to whether the jury believes that the charged offenses were committed. Maybe let me put it a little different way. In a case such as this one, where you have allegations made in trial testimony by the complaining witness, and you have other crimes testimony, if the jury believes the complaining witness, but does not believe any of the other crimes witnesses, the appropriate verdict is guilty, because they have found that the complainant is credible, the state has proved its case. The flip side of that, if the jury does not believe the complaining witness, but believes all of the other crimes witnesses, the appropriate verdict is not guilty. And so that's what I mean about substantive evidence. And again, the case law is clear. I think even the instruction at some point, uses the phrase limited purpose, even counsel for the state. In her appellees brief agrees that other crimes testimony must be considered for limited purposes, not as the ultimate proof as to guilt or innocence. And the case law is very clear. There were other crimes testify, the verdict must come down to the testimony of the complainant. It can't just be based on the testimony of the other crimes witnesses. So I hope perhaps that that makes my argument a little bit more clear. Mr. Fisher, thank you. Yes, Your Honor. Does the inclusion of propensity in the limiting instruction, save the instruction, if all the other listed purposes are found to not apply? No, I don't believe it does. Because again, the defendant acknowledges that in light of the fairly recent Illinois statute, that propensity is now a basis for admission of other crimes evidence. Of course, the judge still has to weigh probative value versus prejudice. Nonetheless, that is an appropriate basis. So that's fine. The problem is the jury should have limited its consideration to propensity. It should not have been told it could consider it for all of these other purposes. And again, most egregiously, most blatantly improper was the part of the instruction telling the jury, it could consider this testimony, again, a substantive evidence. In other words, you can vote guilty based on the testimony of the other crimes witnesses. And I would submit, Your Honors, that if the only basis set forth in this instruction were propensity and substantive evidence, I would again be making the same argument. So the mere fact that one of them, one of the bases is appropriate, that does not save the instruction. Because the danger here is that the jury voted to convict because they believe the other crimes witnesses, even if perhaps they did not find the complaint incredible. That's the problem. That's what we don't know here. In addition, this was a correct when she told the jury that there was no physical or circumstantial evidence of the charge defenses, no eyewitnesses with respect to the charge defenses. So the case should have boiled down to the jury's assessment of the credibility of the complainant's allegations in her trial testimony and the credibility of the defendant's denials to the police officer in the interrogation tape. Because this was a credibility case, these errors could not have been harmlessly deprived Mr. Vilchus of his right to a fair trial. Mr. Fisher, can I ask you about the tape since we brought that up? Okay. Yes, of course. The jury allegedly was shown a redacted version of the tape, which the court has also reviewed. Can you tell me, does anybody have the original tape? So that is a good question. I will tell you, I don't know the answer to that. I've not asked that specific question. As referenced in the reply brief in response to the state's argument, I did make some inquiries before I even filed the opening brief because of the references to redaction in the trial transcripts, which were not crystal clear as to exactly what was redacted. But because of those references, I made some inquiries before filing the opening brief because I wanted to make sure that the tape that this court has was, in fact, the interrogation tape played a trial. And so I did not ask whether there was another tape. What I was trying to ascertain is just the accuracy of the tape in this court's possession. And based on those inquiries, I believe that it is. The burden, well, the presumption in the state of Illinois, and this comes both from Illinois Supreme Court decisions going back as far as 1899 and also from Supreme Court Rule 329, the presumption is that the record on appeal is complete and accurate. If a party has concerns or questions, that party has the burden of investigating. If the party, through that investigation, finds out that the tape or the records that the court has is inaccurate, the burden is on that party to overcome the tape. Counsel could have moved to supplement the record with that tape, perhaps, along with an affidavit from the trial prosecutor saying, this is the correct tape, not the tape the court has. Isn't one of the issues of the appellant is the ineffective assistance of counsel for failure to request additional redactions from the tape, which would imply then that there were other redactions and no one knows what and when those redactions were on this tape because I've watched the tape and I'm trying to find where anything shows that there was a stop or a change at all. Right. So, we talk about redactions. Again, the trial transcript references redactions. Unfortunately, they are not very clear as to what exactly was redacted, but apparently they agreed on redactions. So, we now have this tape that comes to court, which is referenced as People's Exhibit 5. That's how it was referred to in the trial court. And again, this was a prosecution exhibit, so presumably it came from the prosecutor's office. When I watched this tape that the court has in its possession, I saw what I believed were statements by the prosecuting officer, I'm sorry, the interrogating officer that should not have been heard by the jury, and so that's the basis for my issue two argument. And so, in making that argument, I argue the trial counsel was ineffective because while apparently counsel agreed to certain redactions, they should have agreed to additional redactions. And of course, the question for this court here, as it always is in a direct appeal, is what is the evidence that was presented at trial? If there was other evidence that existed but is outside the record, we don't worry about that. The question is what was presented at trial. So, it's important. The defendant submits is the portions of the tape that this court has that the defendant submits were improper, were prejudicial, and the question to the court should be... Isn't it, Mr. Fisher, isn't it the defendant's duty or obligation to give us the tape that was played in order to determine whether there was ineffective assistance? I mean, we can't guess at this. Isn't this your obligation? Yes, and I believe the obligation is fulfilled because your honors have a tape. This is not a case where we don't have a tape clearly. Clearly, if there was no tape part of the record on appeal, there is no way that I could make a good faith argument about the tape unless there was a transcript in the record, and there is not. But here we have a tape. This isn't a missing tape. We have a tape. The state has now expressed concern, well, maybe, possibly, perhaps, gee, I don't know, it might not be the tape. We have a the burden if the state, in good faith, believes this is not the correct tape, it's not enough to speculate, say, gee, maybe, perhaps, the burden is on the state to prove that this tape is not the correct tape. I should also... Mr. Fisher, thank you. You'll have an opportunity in rebuttal. Justice Davenport or Justice Albrecht, any additional questions at this time? I have none. All right. Thank you. Ms. Bella. Good afternoon, your honors. Jamie Bella on behalf of the state of Illinois. May it please the court. As counsel noted, first, I'd like to point out that each of the issues that were raised here are not preserved for purposes of appeal. So for each issue individually, it's being brought before the court under either or both the plain error doctrine or the ineffective assistance of counsel. And with respect to each one of those, the burden will be on defendant in each of the issues, in all parts of the issue, to establish the plain error or that the counsel was deficient in performance before the analysis proceeds. Now, of course, under both of those, there's a have to consider the substantive merit of the argument in order to determine whether there was plain error. But the state's position is that with each of these, especially with the issue related to the video, which I'll start there, is entirely speculative, especially when we're considering about the possibility that this is not the redacted video. And as counsel pointed out, there is a presumption in the state of Illinois that the record is correct on appeal. But also, as counsel pointed out, that when it be when there's some concern that the evidence that's in the record does not accurately accurately reflect what was presented in the court below, that a burden evolves on that on that party to establish and correct that specific error, I guess, in compiling the record. Okay, so is it the state's position that it is the tape that was played at trial? I don't have a copy of the redacted tape. The only tape that I've been able to view is the one that is in the record. I will say, though, I think that the video speaks for itself. And the video shows the defendant when he was first brought into the room and continues all the way until the very end of the video, the defendant is seen leaving the room. There's nothing in the video that shows that there's any gaps of any kind, which would suggest that there are no redactions. And I understand counsel's point that if the state believes that that is not the correct video, that then the state could. However, I think as counsel pointed out, he also felt that this video was not perfectly accurate, which is evidenced by the fact that he did seek to look for that. But by just saying, I think it's right doesn't kick that burden to the state now. But basically, counsel from from our perspective, we we have a tape and that was that that someone a certified to us isn't the tape that was presented at trial. If that's not if we can't then how are we to rule? Well, given that this is a plain error issue or an effective assistance issue, I think the issue becomes that the defendant can't establish his burden. And, you know, to the extent it would be improper to to speculate as to the video, what portions of that video without any kind of a record of specific timestamps that were redacted from the video, which defense counsel at trial would have, even if the specific video is not redacted, the timestamp record of redactions would be in defense counsel's possession. Counsel was at the trial. So I'm sorry, your honor, I, we, we, we are reviewing the record. And the record we have is a tape. And that tape includes other crimes evidence that was not admitted by the court. There's extra testimony in there regarding a victim that was not admitted into evidence. It was not able to tell us whether that was or was not provided to the jury. That's potentially a problem. Do you see that problem? I do. And that's why my concern here is that, you know, the specific claim that's being raised here is that essentially this entire video was played for the jury. That's essentially what the defense is arguing is that this whole video was played because that's what's in the record. I think the record absolutely rebuts that argument, given the fact that every single step of the interview is contained on the video provided. So I think that it's the defendant's burden to establish that what's on that video was played for the jury, despite the evidence in the record that the specific portions and have to, in my context in the discussion regarding the redactions. And I believe it said the agreement was to redact the portions related to, you know, I don't want to misquote what they said, but it is included in the record what specifically the content that they were redacting from that video. And so I think that it's a little bit disingenuous to say that the state had a burden to find or to clear up an issue in the record that the defense didn't know about when the party who he, as the rule says, the party who discovers this, this inaccuracy as a burden to clarify that. And I don't think that that happened here. And just counsel, counsel, we have a tape. We have a tape that was purported to be the exhibit that was played to the jury. That's what we have in the record. Don't you think the responsibility for clarifying that this entire tape was in fact not played to the record would fall on the party who's disputing that this was the tape that should be in the record? Yes, my yes. But what I'm saying, and I think maybe I'm not being clear is, as counsel pointed out, the duty to do that evolves to the person who complained, who is defense counsel, identified this and sought to clarify it, but then just said that's good enough. And then by the time that I discovered this, the timestamp redactions that are out there could have been discovered. So it's unclear that there was ever any, you know, to the extent there was an investigation into what specific parts were redacted. We don't know that, but I think that the record reflects that it's, that it is an inaccuracy. And I think it's rule 321. I can't, I can't remember the rule name, but basically when count, when the defense raised this issue, it was clear that the, that the, the, the redacted video was not the one that was being viewed, especially because in the, in the statement of what was redacted in the record, it's clear that those are the parts that were sought to be redacted. So now on, on appeal, he's saying that counsel was ineffective for not seeking redaction of those parts when the record shows that those were redacted. So while we don't have the video itself, we do have testimony or statements in the record identifying what parts were redacted. So I think the consideration has to be whether those redactions that are reflected in the parts where they discuss what was redacted, whether redacting those. Let me, let me just say this. I have personally been involved in situations where parties agreed to a redacted video and then something goes wrong and the jury gets the unredacted video. How do we know that isn't our situation here? I think the best evidence of that is, let me find it in my brief. If the detective, I lost his name, the detective, the detective that was interviewing him also testified at trial. And the detective that was testifying when the video was played, and I can't find his what he, his questions limited. They were asked specifically, were your questions limited to generalities? And the office, the detective answered affirmatively. And that those specific parts where he goes beyond the generalities at the very end of the video would, would, would, would coincide with the testimony he gave that his questioning was limited to very general questions versus the very end of the video where he talks specifically about, in fact, the portions that are challenged now on appeal. So can I ask a question? Did, did the video, did a video go back to the jury? I, you know, I don't, I didn't make a note of that in, in, in my oral argument preparation. I think I would have to confer back to the transcript from when they did the, sent the jury off to deliberate. Counsel, do you acknowledge that in the video, when the trial counsel says there's a stipulation and then it isn't identified as what was being redacted, that one of the areas was testimony of a alleged prior victim whose initial starts with the letter J. Okay. And that during the video, in fact, this woman's first name is actually said repeatedly through the video that the court has in its possession, the J J Jenna. Ah, gee, I'm sorry. It's a G maybe. Um, I, is this one of the night, I think you might be referring to one of the 1990s victims that, um, I don't have a note specifically, um, 47, 25. My point being that if it was to have been redacted and they continually refer to her because they weren't allowed to go into that older testimony, then why would it have been allowed in the video that went back to the jury? So that's why I'm trying to understand why there isn't another video tape somewhere. I believe that the, so when officer is Gunty, when officer Gunty testified that he questioned the defendant only in generalities and not any specific, uh, persons, you know, the other victims or other alleged victims who actually weren't included in the other crimes witnesses that he specifically says that he discussed only generalities and that the video that was played during his testimony, you know, there's nothing in the record to indicate that any of those, anything beyond the generalities that he's describing in his testimony, you know, would be shown in the video. So if there was the video, except the video, what we have is a record that says, this is the video that was played to the jury. If we, if there was a different video that was played to the jury, we don't have it. And we have to rule based on what we have and no one's given us the redact, a redacted video or a different video. So how are we supposed to rule any different than assuming that this is the video that was played to the jury? If your honors would allow us to supplement the record, uh, uh, prior to, um, your final decision, I can attempt to speak to the state's attorney's office, or at least at minimum, get a list of timestamps that were redacted. Um, if, if the court would allow the state to supplement that. I believe that there is an order that's out there that gives you until June 13th to get that done. Also to talk amongst yourselves to, as to what was the correspondence at the time, prepping, preparing for trial as to what was going to be redacted and what was going to be part of this quote, stiff that you referenced or was referenced before the trial court. Yes. And if, and if, if that was suffice for your honors, um, we'd be happy to, to rest on our arguments and then supplement. And then, um, based on that, have that decision. Um, we asked you to recreate what that stipulation was, and then to tell us in the video, what was redacted from the one that we're looking at, which I don't believe has any redactions in it. Yeah, I, I agree. I don't believe that the one that's in the record has any of the agreed upon redactions that were made by counsel before trial. So, um, if, um, I, I, I believe it's my belief that the, if that at most I might be able to, um, come up with a list of timestamps and then possibly, um, you know, a stipulation as far as what was and was not, uh, redacted from that video. Um, and then we can file that with the court. Um, I, I see that I'm getting close to my time, um, regarding the, uh, the, the, the limiting instruction regarding the, um, two rebutted defense. Uh, I think that that, again, given the fact that this is an agreed limiting instruction, it's a plain error review. Um, it, it's a very broad to say that the language two rebutted defense means essentially that the entire case can come down to some other evidence to prove fully the state's burden. And I think that the two rebutted defense could be interpreted otherwise, you know, I understand counsel's interpretation of what he's saying, but I think another fair interpretation here is if any specific part of the other crimes testimony, if, if the defendant argues or presents evidence that that did not happen or that there's some other defense to it, namely. So like under intent where there's an innocent construction, if, if, if the evidence can be used to rebut that by showing support for a claim made by BT, and I think it's a big leap to go from those words to nothing that the defense, that the victim, the specific victim in this case claimed, um, can be believed, then you can just use some other testimony by another witness and then use that to find him guilty. I think that's an incredible leap and I don't think it's supported. And specifically, if there was a specific, like what specific piece of evidence is, is he referring to that does not fall under one of the other proper purposes that the jury would have relied on to reach that conclusion. I think there's a burden here to establish that plain error. And there's not even a discussion about a specific piece of other crimes evidence that was not allowable under motive intent, uh, absence of mistake. Uh, I see that I've run my time. If I may briefly conclude. Do so. Thank you. This, the state, a request that this court allow, um, supplementation of this specific video information and, and then to find, to affirm the trial court's decision in this case. Thank you, Mr. Fisher rebuttal. Yes. Thank you. Your honors. Uh, first of all, with respect to the, the instruction, I think the state belatedly is trying to struggle to come up with, well, gee, is there an innocent interpretation for, to rebut a defense? Uh, the state is brief. Certainly offers. And today offers this court, no legitimate interpretation, no logical interpretation of those words, other than you could consider that testimony as substantive evidence and the prosecutor in rebuttal closing argument doubled down on that when she told the jury, you could convict if you believe the complainant, but here we have all these other witnesses. This case comes down to credibility. All four of these witnesses are credible. And in this case, we have four witnesses, four women crying out for justice. It's an emotional appeal, but it's also clearly, clearly telling the jury you can convict. You can, even if, even if you're not convinced by the complainant, you could convict based on the other crimes witnesses that's blatantly improper. And yes, unfortunately, counsel in this case, fell asleep at the switch in various different ways. One was not by objecting to that one was by not objecting to portions of the tape that are part of the record on appeal. Prior to trials, trial counsel tried to keep out some of the other crimes evidence, but didn't even file a post trial motion in this case. Unfortunately, counsel was ineffective. Unfortunately, the errors are so serious that they were prejudicial and should be considered plain. With respect to this videotape, it may be your honors do, I didn't understand much of any of counsel's response to Justice Albrecht's question. I agree with Justice Albrecht. The burden was on the state. It's interesting that counsel today says, well, I guess I could try and call the state's attorneys. If counsel had doubts, when she read the record, she read my brief before filing her brief. That's the first place she should have gone. That was Herbert. It's too late at this point. Furthermore, as I referenced briefly in the reply brief, and it's off the record, but I felt compelled to do so in response to the argument. And I feel compelled to say it today, is that when I read the record, I didn't doubt that this court had the correct tape. I only wanted to, frankly, fulfill my obligation. And I didn't want a situation where I made an argument, said, oh, this tape was prejudicial, and then get egg on my face when the state comes back, if they could possibly potentially come back with some other tape. That would make me look foolish. It would make me unprofessional. It wouldn't be appropriate to even make the argument to the I wasn't in the court when this case was tried. I had no first-hand knowledge. So I called the prosecutor's office, trying to talk to the prosecutor, saying, you know, there's references to a redacted tape. Just want to make sure we have the correct tape. I left a voicemail, received no response. I reached out. Well, this is, you know, extra record, I appreciate it. And I know we're asking for information outside the record. But I think that, well, I don't want to, I think that we, I don't want to speak for my colleagues. I at least think it's important to have the correct tape in terms of our review. And to the extent that that can be obtained, that's the order that's outstanding that Justice Davenport referenced, that to the extent that we can get this information, we're supposed to get, we want it by, was it June 13th, Justice Davenport? It was, it was. So, and I mean, and I think when you read the record, it strongly suggests that there was a redaction. The question is whether a redacted version of that tape was played and just, and then again, did the redacted version or some other version go back to the jury? And I think that's the questions, at least that I have. By the way, Mr. Fisher, are you aware whether the tape was provided to the jury as part of their deliberations? There's nothing specifically in the record indicating that it was. During deliberations, the jury did ask to see the transcript of the complainant's testimony, didn't specifically ask to view the video. It's, again, it's not, not clear on the specifically saying that it was given to the jury during deliberations, and it doesn't appear that they requested to see it. I think if this court so chooses, I think it might be appropriate if the court wanted to issue an order or request to the circuit clerk's office asking if there's another tape. That's not how I read your honor's order, it seems to be. That's already been done, Mr. Fisher, that that was done before the order was entered, trying to get the clerks to locate the order. Our clerk was unable to get them to find anything. Yeah, fair enough. I know my time's up. If I could just say two more things very, very quickly. The state's speculation, and that's really all it is, the state's speculation in its brief that this may not have been the correct tape is based on a faulty premise. We haven't discussed that yet. It talks, or maybe brief references, she talks about the time or the numbers on the tape proceeding in sequential order and theorizes that had there been redactions, there'd be skips or jumps in those numbers. The problem is those numbers do not appear on the tape itself, they are on the player that accompanied the tape, and I talk about this in the report. Okay, counsel, that's outside the record also. Well, no, this is part of the record. We're talking about what's on the tape when you look at it. Okay. I think it is part of the record. It is, Mr. Fisher, but you did make this argument. I appreciate it. We're going to hold you to your time at this point. Justice Davenport or Justice Albrecht, any additional questions at this time? I have none. All right. We thank both sides for spirited argument. We're going to take the matter under advisement and issue a decision in due course.